# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

LINDEN GREEN CONDOMINIUM )
ASSOCIATION, )
                                   )
    Plaintiff/Counterclaim-Defendant, )
                                   )
           v.                   )     C.A. No. CPU4-13-000565
                                   )
UBALDO CESAR, )
                                   )
    Defendant/Counterclaim-Plaintiff. )

Submitted: May 20, 2015

Decided: July 7, 2015

Christopher J. Sipe, Esquire                        Ubaldo Cesar
P.O. Box 8092                                       P.O. Box 5413
Newark, DE 19714                           Wilmington, DE 19808
*Attorney for Plaintiff/*                                *Defendant/*
*Counterclaim-Defendant*                      *Counterclaim-Plaintiff, Pro se*

## ORDER ON DEFENDANT'S MOTION TO VACATE

Plaintiff/Counterclaim-Defendant Linden Green Condominium Association ("Plaintiff") brings this action against Defendant/Counterclaim-Plaintiff Ubaldo Cesar's ("Cesar") for failure to pay condominium association fees. Cesar filed a counterclaim against Plaintiff, alleging Plaintiff failed to repair a leaking pipe in his condominium unit resulting in damage to the unit.

The Court scheduled the trial for May 12, 2015 and the parties were sent notice to appear at 8:30 a.m.[1]  At a hearing on May 8, 2015, defense counsel was granted leave to withdraw from the case, but was ordered to appear on May 12, 2015 to address any notice issue which may surface prior to the trial.  At 9:13 a.m. on the morning of trial, Cesar had not appeared; therefore, the Court entered Judgment for Plaintiff on liability, dismissed defense counsel, and dismissed Cesar's counterclaims.  Following, the Court commenced a hearing to determine damages.  Just as Plaintiff completed its case on damages, Cesar appeared at 9:33 a.m.[2]   Cesar now moves the Court to vacate the judgment and any conclusions it may reach regarding the inquisition hearing.

Cesar did not present his position in a formal motion, but stated on the record the proceedings should be vacated.  Cesar stated he had a situation with his attorney and he did not know the time the trial was scheduled.  He further stated his attorney withdrew from the case on May 7, 2015; he did not provide him any information; his attorney did not return his calls; he was not notified of the time the trial was scheduled and he had no information to proceed with the trial because his attorney retained all his materials.  Cesar also indicated he intended to appeal.

The Court reserved decision on Cesar's motion to vacate and the value of damages. The Court also on May 12, 2015 sent a letter to former Defense Counsel requesting he address the issues raised by Cesar at the conclusion of the trial.

---

[1] The docket entry October 27, 2014, indicates that trial in this case is scheduled for May 12, 2015 and the parties were noticed to appear at 8:30 a.m.

[2] See Transcript of Court Journals May 12, 2015, Page 4 (attached as Exhibit A)

Former defense attorney responded on May 18, 2015 to the Court's inquiry. The response provided to the Court indicated Defense Counsel advised Mr. Cesar on May 7, 2015 electronically and by telephone voicemail message of the motion hearing. The trial date was included in that material. Defense Counsel further indicated he received a voicemail message from Cesar at 6:30 a.m. on May 8, 2015 confirming receipt of his call and requesting that he cease all further communication with him. Further, Cesar did not appear at the motion hearing held on the morning of May 8, 2015. Finally, Defense Counsel indicated that on April 20, 2015, he received discovery from plaintiff which was voluminous, but he was unable to reach Cesar until May 5, 2015, the date he filed the motion to withdraw.

## DISCUSSION

"A motion to vacate a default judgment pursuant to . . . Civil Rule 60(b) is addressed to the sound discretion of the Court."[3] Three elements must be proven by the movant before a motion to vacate judgment is granted:

> (1) excusable neglect in the conduct that allowed the default judgment to be taken; (2) a meritorious defense to the action that would allow a different outcome to the litigation if the matter was heard on its merits; and (3) a showing that substantial prejudice will not be suffered by the plaintiff if the motion is granted.[4]

---

[3] *Verizon Delaware, Inc. v. Baldwin Line Const. Co., Inc.*, CIV.A.02C-040212JRS, 2004 WL 838610, at *1 (Del. Super. Apr. 13, 2004).

[4] *Id.*

"Excusable neglect is defined as the actions of defendant which might have been the acts of a reasonably prudent person under similar circumstances."[5] Further, although Delaware courts hold *pro se* litigants to a "somewhat less stringent standard" in their filings and interactions with the Court, a party's *pro se* status is "not a blank check for defect."[6]

After an *in-camera* review of Macconi's communications with Cesar and the docket, it is unreasonable to believe that Cesar was not aware of the trial date. The communications show that Macconi provided notice of the trial date in writing on two separate occasions, including a May 5, 2015 email with court documents discussing the trial date. Cesar's assertion that he was not made aware of the trial date is not supported, and is contrary to documents in the record.

Cesar is correct that he did not have the documents to move forward with a defense, but this was of his own making. Defense Counsel indicates that he could not reach Cesar to discuss the case, and when he did reach him, he was informed to cease all communications with him. With these proceedings progressing, a reasonable person would take steps to appear at scheduled proceedings to protect his interest. Here, Cesar did not appear on his attorney's application to withdraw, nor did he appear for trial.

Accordingly, under this set of facts, the Court cannot find that Cesar's conduct was that of a reasonable person under similar circumstances which would support a finding of excusable neglect.

Turning next to the issue of whether there exists a meritorious defense, Cesar in his counterclaim seeks offset of any damages awarded to Plaintiff for alleged failure to repair a

---

[5] *Lewes Dairy, Inc. v. Walpole*, 1996 WL 111130, at *2 (Del. Super. Jan. 5, 1996).
[6] *Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008).

leaking pipe in his condominium unit. Cesar alleges that he stopped paying the assessment because Plaintiff's failure to repair the pipe prevented him from renting the condominium unit to potential tenants. Cesar's argument here lacks merit because Delaware courts have held that a homeowner's obligation to pay condominium association assessments is not conditioned upon the fulfillment of the association's obligation to homeowners.[7] In other words, assuming *arguendo* that Plaintiff indeed failed to repair the pipe, such failure does not absolve Cesar of his obligation to pay assessments.   Because, as the Court stated in the *Park Centre* case:

> "Whatever grievance a unit owner may have against the condominium trustees must not be permitted to affect the collection of lawfully assessed common area charges.  A system that would tolerate a unit owner's refusal to pay assessment because the unit owner asserts a grievance, even a seemingly meritorious one, would threaten the financial integrity of the entire condominium operation.   For the same reason that taxpayers may not lawfully decline to pay lawfully assessed taxes because of some grievance or claim against the taxing governmental unit, a condominium unit may not decline to pay lawful assessments."

Finally, although Plaintiff would suffer inconvenience, there is no basis to conclude it would be substantially prejudiced if the default judgment is vacated.  However, since I find Cesar's conduct does not constitute excusable neglect and the results of the proceeding would not likely be different, there is no basis to grant the motion.  Therefore, Cesar's motion to vacate the dismissal of his counterclaim and the Court order entering default on liability is denied.

---

[7] *Park Centre Condominium Council v. Epps*, 1997 WL 817875 (Del.Super. May 16, 1997) (holding that the obligation to pay assessments of the condominium association is not dependent upon the fulfillment of any obligation which the association may owe to the homeowner)).

## ORDER ON DAMAGES

At trial, after the Court entered default judgment against Cesar on liability, the Court held an inquisition hearing to determine damages. Plaintiff introduced its exhibits through its sole witness, Christopher Dimarco.[8]

Plaintiff's testimony and exhibits indicate that the purpose of the condominium fee is for the maintenance of common areas.[9] Cesar entered into a contract with Plaintiff for unit A-2. Pursuant to the agreement, he is required to pay monthly condominium assessment. When Cesar first took ownership of unit A-2, in 2002, the condominium assessment was $195/month.[10] Dimarco testified that as the cost of maintenance increases, the condominium assessment increases. The assessment increase at the beginning of each calendar year. In 2015, unit A-2's condominium assessment increased to $377.44/month.[11]

Plaintiff's Exhibit No. 5 "Statements" indicates when Cesar made a payment on November 30, 2011[12]; he had an outstanding balance of $2,012.50, for the period ending December 18, 2011, excluding the finance charge. The condo fees from December 31, 2011 to May 1, 2015 are $13,536.39, late fees of $1,000.00, and finance charges of $4,702.64.[13] In calculating the amount due, I find that Plaintiff has established a claim for the condo fee of $13,536.39 and late fees of $1,000.00. I find no basis for the claim based upon finance charges of $4,702.64 and do not award any amount on this matter.

---

[8]Dimarco has been Plaintiff's property manager since 2013. He oversees the management of the condominium association and the individual units. The association is governed by a five-member board, and holds monthly meetings open to all condominium owners. The Court accepted eight exhibits into evidence.

[9] *See* Plaintiff's Ex. 1. The rules and regulations of the association are kept in the management office, and may be printed from the association's website.

[10] Pl.'s Ex. 4.

[11] *Id.*

[12] *See* Pl.' Ex. 5-8.

[13] Pl.'s Ex. 5.

Plaintiff seeks $401.00 to file and record the lien, and $9,316.64 in attorney's fees.[14] Based upon the nature of litigation, the complexity of issues, and the length of the trial, I award attorney's fees in the amount of $5,589.98, and the amount to cover cost of the lien.

Accordingly, judgment is entered for plaintiff in the amount of $14,937.39, attorney's fees of $5,589.98, costs, and post-judgment interest of 5.75% until paid.

**SO ORDERED**

_____
Alex J. Smalls
Chief Judge

Linden Green-ORD  July 2015 (LR)

---

[14] *Id.  See also* Pl.'s Ex. 2, Article 1 Section 2(b), authorizing the collection of attorneys' fee.